```
                    UNITED STATES OF AMERICA
                    DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA      )
                              )
         v.                   )     CRIMINAL NO 16-10303-DPW
                              )
MICHAEL DIROCCO,              )
         Defendant            )
```

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States submits this Sentencing Memorandum in the above-captioned case, which is scheduled for sentencing on March 15, 2018. For the reasons outlined in this memorandum, the Government believes that a sentence of 120 months' imprisonment, a sentence in the mid-range of the guidelines, is the appropriate sentence in this matter. Additionally, the government requests that upon completion of his sentence, Dirocco be placed on supervised release for a period of 60 months, pay restitution in the amount of $10,065.00, and pay a mandatory special assessment of $100.00.

**I.   PROCEDURAL HISTORY**

On October 13, 2016, Michael A. Dirocco ("Dirocco") was charged in a one-count Indictment with armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). On November 28, 2017, Dirocco pled guilty to a one-count Indictment charging armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d).

## II.  FACTS

The facts, as stated in the Pre-Sentence Report ("PSR"), are somewhat in dispute. The government maintains that the following is an accurate statement of Dirocco's criminal behavior.

On November 17, 2014, at approximately 12:30 p.m., Dirocco and another individual entered a Kmart store in South Attleboro, Massachusetts. The two individuals were observed on surveillance video cameras stealing an item, later determined to be a black Daisy Powerline 4151 pellet gun. At this time, Dirocco was observed wearing a brown jacket.

Approximately one hour later at 1:30 p.m., two masked and gloved individuals entered a branch of the Wester Bank in Seekonk, Massachusetts. One of the individuals ("Robber #1") vaulted over a teller's counter and demanded the bank's money. The other individual, later determined to be Dirocco, brandished what appeared to be a black semi-automatic firearm and stated words to the effect of, "Where is the money, show me where the money is, open the drawers." Robber #1 then moved along the various tellers' counters, removed currency from various drawers, and placed the currency into his pockets.

Both robbers then exited the bank and were observed by a bank employee entering a "large black SUV" ("SUV") which then departed the bank's parking lot. The bank employee noted that

the SUV bore Massachusetts license plates, but was unable to observe the plate's characters.

Local law enforcement officers arrived at the scene and interviewed the tellers.  A teller described Robber #1 as a white male, approximately 6'0", 180-200 pounds, wearing a black ski mask, work gloves, dark pants, and a navy blue hooded sweatshirt.  A different teller described Robber #2 as a white male, 5'9", wearing a black ski mask, work gloves, blue jeans, a dark gray hooded sweatshirt, and white sneakers.

Bank surveillance cameras were operating and functioning on the date of the robbery.  The cameras captured footage of the robbers as they entered and then robbed the bank.  The surveillance footage of the robbers was consistent with the description provided by the tellers.  The bank's exterior cameras also captured images of the two robbers leaving the bank's parking lot in a large black SUV ("SUV") after the robbery.  A review of exterior footage revealed that the driver's side running board of the SUV was damaged.

A post-robbery audit determined that the two robbers had taken $10,065.00 in US currency during the robbery.

### III. *INITIAL INVESTIGATION*

Following the robbery, law enforcement officers broadcast a description of the robbers along with a description of the SUV the robbers were observed exiting in.  This BOLO ("Be on the

lookout") was broadcast to both Massachusetts and Rhode Island law enforcement agencies.

On November 17, 2014, at approximately 1:37 p.m., the Pawtucket Police Department in Rhode Island received information from a civilian caller regarding "suspicious activity" in the area of Clews Street in Pawtucket.[1] This civilian caller, who had not been privy to the BOLO, stated that a large black SUV had stopped on the street in front of his house and that he observed two white males exit the SUV, remove the SUV's Massachusetts license plates, and exchange them for Rhode Island license plates. The caller recalled that one of the males was approximately 5'8" tall and the other was closer to 6'0" tall. The caller also stated that the Rhode Island license plate that was being affixed to the rear of the SUV had only one screw as he noted it was "hanging crooked." The two males then re-entered the SUV and exited the area. The civilian caller recalled the Rhode Island license plate numbers as either 373-2653 or 373-2655.

The Pawtucket Police Department, which had received information regarding the Webster Bank robbery, queried the Rhode Island DMV on these license plate numbers. The first registration (373-253) came back as being registered to a red

---

[1] Clews Street in Pawtucket is approximately 1 mile from Webster Bank in Seekonk, Massachusetts.

4

sedan. The second registration (373-255) came back as being registered to a black Ford SUV. The registered owner of the SUV was Kathleen Dirocco of Burrillville, Rhode Island. The Pawtucket Police also learned that Kathleen Dirocco has a son, Michael A. Dirocco, and that Michael A. Dirocco was on probation for a 2008 robbery committed in Rhode Island.

Later that day on November 17, 2014, at approximately 2:09 p.m., law enforcement officers travelled to Burrillville and spoke with Kathleen Dirocco. During their initial interview, Kathleen Dirocco confirmed that she owned a black Ford SUV. She was then shown a photo of the SUV from the bank's surveillance video and confirmed that the SUV in the photo was hers. Kathleen Dirocco further stated that her son Michael Dirocco was currently in possession of the SUV and that he, Michael, had just called her and asked her to pick him up at his girlfriend's ("KB") home in Cranston, Rhode Island.[2]

Law enforcement officers immediately traveled to the address in Cranston, Rhode Island and set up surveillance. At approximately 3:38 p.m., the officers observed a black SUV backing into a driveway on Drowne Street. The SUV was operated by a white female, later determined to be KB. The officers stopped the SUV, approached the vehicle, and asked KB if she

---

[2] The street address in Cranston, Rhode Island is approximately 9 miles from Webster Bank in Seekonk, Massachusetts.

5

knew Dirocco's location.  KB stated that Dirocco was following her in a green pickup truck ("the pickup truck").  At that time, the officers noted a green pickup truck heading in their direction.  The officers noted that the pickup truck abruptly stopped, turned around, and headed away from their location.

The officers pursued the pickup truck and noted that the rear license plate was Rhode Island 373-255.  They also noted that the words "Airtight Windows" were printed on the vehicle's rear tailgate.  After an extended chase, the pickup truck finally crashed into a tree.  The driver and sole occupant of the vehicle was Dirocco.

Law enforcement officers searched Dirocco and recovered $521.00 in US currency along with two license plate screws from his pockets.  Dirocco, who had an outstanding warrant in Rhode Island, was placed under arrest and additionally charged with motor vehicle infractions by the Cranston Police Department.  Dirocco was transported to the Cranston Police Station and advised of his *Miranda* rights.  Dirocco did not make a statement.

## IV. *FURTHER INVESTIGATION*

### A. *Search Warrants*

Later that day, following Dirocco's arrest by the Cranston Police Department, Rhode Island law enforcement officers sought and obtained search warrants for the SUV, the pickup truck, and

6

KB's home in Cranston, Rhode Island.  The following items were recovered:

- KB's home in RI: large gray hooded sweatshirt, work gloves, and an American Classic BB-gun
- SUV: gray work gloves and a Coastway Community Bank deposit slip dated November 17, 2014, 2:59 p.m., in the amount of $300.00
- The pickup truck: a Metro PCS cell phone

### B. Interview

While the aforementioned search warrants were being executed at KB's home on November 17, 2014, law enforcement interviewed KB.  In summary, KB stated that she had received messages earlier that day from Dirocco, which stated in substance that he and another were going to rob a bank in Massachusetts.  KB further stated that approximately 2:00 p.m. that day, Dirocco arrived at her home in the black SUV.  She and Dirocco then traveled to a local bank to deposit some money after which Dirocco then purchased the aforementioned green pickup truck.

### C. The Used green Pickup Truck

On the same day, November 17, 2014, Law enforcement spoke to the owner of a local Rhode Island business.  The owner confirmed that earlier that day Dirocco had purchased the pickup truck from him for $700.00 (paid in $100 bills).  The owner stated that Dirocco had a large stack of $100 bills in his possession at the time of the purchase.

### D. KB's aunt

On November 22, 2014, law enforcement interviewed KB's aunt. In summary, KB's aunt stated that she had spoken to Dirocco and he admitted his involvement in the aforementioned robbery. KB's aunt also stated that, following the aforementioned robbery, she and KB returned to KB's Cranston, Rhode Island home where they located $1,920.00 in US currency in a bedroom closet.

### V. GUIDELINE ANALYSIS

#### A. Offense Level Computation

1. **PSR ¶ 41 Adjusted Offense Level:**

The Government agrees with Probation's conclusion that Dirocco's Adjusted Offense Level is 28. This includes adjustments for the following specific offense characteristics:

- ¶ 36 - property of a financial institution, 2-level increase;
- ¶ 37 – use of a dangerous weapon, 4-level increase; and
- ¶ 40 - obstruction of justice, 2-level increase.

2. **PSR ¶ 45 Total Offense Level**

The Government agrees with Probation's conclusion that with timely acceptance of responsibility, the Adjusted Offense Level should be reduced by 3 levels, pursuant to USSG §§ 3E1.1(a) and 3E1.1(b), which results in a Total Offense Level of 25.

### B. *Defendant's Criminal History*

The government agrees with Probation's conclusion that Dirocco, with 13 criminal history points, should be placed in Criminal History Category VI [PSR ¶ 71][3].

### C. *Sentencing Options*

The government agrees with Probation's conclusion that with a Total Offense Level of 25 and a Criminal History Category of VI, the guideline imprisonment range is 110 to 137 months' imprisonment [PSR ¶ 101].

## VI.    SENTENCING RECOMMENDATION

18 U.S.C. § 3553(a) requires a sentencing court to consider specific enumerated factors when determining an appropriate sentence. These factors include: 1) the nature and circumstances of the offense and the history and characteristics of the defendant, and 2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant.

For the reasons detailed below, the Government believes that a sentence of 120 months' imprisonment is fair, just, and

---

[3] The government agrees with Probations' findings and their response to Diroccos' objections to the PSR #7: that the correct criminal history score should be 13, placing Dirocco in CHC VI.

takes into account the factors enumerated in 18 U.S.C. § 3553(a).

Dirocco is a life-long violent criminal with an extensive history of convictions. Dirocco's record of convictions commenced in 2001 when he turned 18, and continued until 2014 when he was arrested on these charges. Dirocco's record reveals multiple convictions for drug possession, multiple motor vehicle violations, and convictions for larceny, escape (2x), vandalism, breaking and entry (2x), and bank robbery (2008). Between 2001 and 2014 alone, Dirocco was arrested and convicted 17 times and sent to prison on multiple occasions. These sentences ranged in duration from 4 months' imprisonment to 20 years' imprisonment with 7 years to serve[4]. In almost every case Dirocco has been sentenced, he has also been found in violation of his probation.

The 2014 armed robbery of the Webster Bank in Seekonk was well-planned and executed. Dirocco and another, prior to the robbery stole a pellet gun. At the time of the theft of the pellet gun Dirocco was observed wearing a brown jacket. Dirocco and another individual hid their identities during the robbery using masks and gloves[5]. Furthermore, following the robbery, the two fled in an SUV bearing Massachusetts' license plates. The

---

[4] 2008 Rhode Island bank robbery conviction [PSR¶ 64]
[5] At the time of the robbery, Dirocco was wearing a a gray jacket. When Dirocco was arrested he was wearing the brown acket he had been observed wearing while at the Kmart.

license plates were subsequently removed from the SUV in a further attempt to hide their identities and involvement in the robbery.

Dirocco knew that on the date of November 17, 2014, he and another were going to rob a bank in Massachusetts as evidenced by the text messages he sent announcing such intent to his girlfriend, KB.

In the hours following the robbery, Dirocco took the bank's money, deposited some into a bank account, purchased the pickup truck, and secreted some at KB's home.

The seriousness of armed bank robbery can hardly be understated, as it greatly affects the lives of the victim tellers and witnesses involved along with society as a whole.

While there is some suggestion that Dirocco has endured challenges in his life, including emotional and drug dependence issues, it is evident he has refused to address and combat these issues and move in a positive direction as a result.  Dirocco has faced numerous periods of imprisonment where he was given opportunities to receive drug treatment, educational enhancement, and job training.  Despite such, Dirocco reverted to criminal behavior.  The only period of time where Dirocco has not been involved in such behavior was when he was incarcerated. In short, Dirocco's criminal record clearly demonstrates his

inability and unwillingness to adjust his lifestyle and conform his behavior to acceptable societal norms.

The government's recommendation, while quite severe, will allow Dirocco to gain access to multiple educational programs, job-training programs, and necessary drug treatment programs. Upon completion of this significant period of imprisonment, Dirocco will be given opportunities to enhance these training and counseling experiences as a condition of his supervised release. Hopefully, these factors will serve as the deterrent Dirocco needs to stop returning to criminal behavior post imprisonment.

## VII. CONCLUSION

For the reasons stated herein, the Government requests this Court impose a sentence of 120 months' imprisonment. Following the completion of this sentence, the Government requests that Dirocco be on supervised release for a period of 60 months, and that he be ordered to pay restitution in the amount of $10,065 along with a mandatory special assessment of $100.00.

This is a just and appropriate sentence as dictated by the facts of this case and Dirocco's criminal history.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: ***/s/ Kenneth G. Shine***
    KENNETH G. SHI

CERTIFICATE OF SERVICE

    This is to certify that I have this date served a copy of the foregoing upon defendant's counsel of record by electronic filing notice.

                                          **/s/ *Kenneth G. Shine***
                                          KENNETH G. SHINE
                                          Assistant U.S. Attorney